UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| Plaintiff, ) | NO. CR-04-262-WFN |
| -vs- ) | ORDER DENYING DEFENDANT'S |
| KENNETH DALE GOOCH, ) | MOTION FOR RECONSIDERA-TION, *INTER ALIA* |
| Defendant. ) | |

Pending Before the Court is the Defendant's Motion for Reconsideration (Ct. Rec. 52). For the reasons discussed below, the motion shall be denied.

## I.  MOTION TO RECONSIDER STANDARD

On June 20, 2005, the Court found that the hot pursuit exception did not apply to Officer Alan Edwards' pursuit of Michael Conn, but that Edwards had the authority to enter the home located at 3010 N. Regal ("the Regal residence") to search for Conn because there was an outstanding misdemeanor warrant for Conn's arrest and Officer Edwards had reason to believe that Conn was inside. The Court also found that the Regal residence was one residence shared by Michael Conn, Kenneth Gooch, and Joanne Kappelman; therefore, Edwards had the authority to search the entire residence for Conn.

As a general rule, the Court may reconsider a previously decided issue where: (1) there has been an intervening change of controlling authority; (2) new evidence has surfaced; or (3) the previous disposition was clearly erroneous and would work a manifest injustice. *See generally Leslie Salt Co. v. United States*, 55 F.3d 1388, 1393 (9th Cir. 1995). The Defendant's motion to reconsider is based on new evidence.

ORDER - 1

## II. FACTUAL BACKGROUND

On March 20, 2004, Spokane Police Officer Alan Edwards was in the area of Regal and Euclid. Edwards observed a vehicle stop in the roadway and then signal right but swing left. Edwards pulled the vehicle over for stopping and standing in the roadway and improper lane usage.

In the drivers seat was Mario McCullough, who was cited for stopping and standing in the roadway and improper lane usage. In the passenger seat was Michael Conn, who Edwards recognized from previous narcotics arrests. At some point during the traffic stop Edwards returned to his patrol car to check and see if there were any outstanding warrants on Conn. Edwards also observed Conn to be carrying a fanny pack.

Edwards was advised over the radio that there was an outstanding misdemeanor warrant for Conn's arrest. The warrant at issue was a 2002 misdemeanor warrant for malicious mischief in violation of Spokane Municipal Code 10.12.020. While Edwards was waiting for verification on the warrant issue, Conn exited the vehicle and ran through the yards of several houses. Edwards gave chase on foot and his observations led him to believe that Conn had fled into the Regal residence. Edwards also knew from prior experience that Conn rented a room in the Regal residence.

Edwards approached the Regal residence and verified the address on Conn's arrest warrant. After back-up arrived, Edwards approached the residence and announced "police." The Government concedes that Edwards told Joanne Kappelman, who opened the door, that he would force entry into the home if Ms. Kappelman did not consent to the search. Edwards then entered the Regal residence and conducted a full search for Conn.

At the supplementary evidentiary hearing, the Defendant called Michael Conn and Joanne Kappelman as witnesses. Conn testified that he had been renting an upstairs room in the Regal residence since March 2004. He further testified that he told Officer Edwards on

ORDER - 2

prior contacts that he lived in the upstairs portion of the house and that Ms. Kappelman and Mr. Gooch resided in the basement.

Joanne Kappelman testified that she had resided at 3010 N. Regal since 1998 and rented out the upstairs rooms as "apartments." She further testified that the bedroom doors in the upstairs portion of the house, as well as the door leading to her living quarters, were equipped with either handle locks or deadbolts. This incident was not Ms. Kappelman's first encounter with Edwards, and she testified that she had advised him prior to March 20, 2004 that the upstairs bedrooms were rented out to tenants and that only she and Mr. Gooch resided in the basement living area. Ms. Kappelman conveyed that same information to Edwards when he entered the Regal residence on March 20, 2004.

Officer Edwards was also recalled at the supplementary hearing. He confirmed that he knew Conn did not reside in the basement living quarters. However, he also was aware that suspects had previously secreted themselves in a crawl space under the stairs. Edwards did not locate Conn inside the Regal residence, but used the items he observed in plain view as probable cause to support a search warrant for narcotics.

In the affidavit in support of the first search warrant (Government's Exh. 18) the following facts were included in support of probable cause: (1) Michael Conn fled the March 20, 2004 traffic stop with a fanny pack in his hands; (2) in Edwards' experience, narcotics dealers sometimes secret drugs in fanny packs; (3) there was a misdemeanor arrest warrant for Conn's arrest; (4) the arrest warrant listed 3010 N. Regal as Conn's address; (5) Conn has an extensive criminal history which includes contacts for possession of stolen property and narcotics; (6) Edwards had reason to believe that Conn fled from the traffic stop into the Regal residence; (7) during the search of Conn's bedroom, Edwards observed a silver spoon which was coated with a white sticky residue, consistent with cocaine or methamphetamine, as well as other drug paraphernalia; (8) during the search of the upstairs bedroom on the west side of the house, another officer observed two glass pipes coated with what appeared to be

ORDER - 3

burnt residue; (9) during the search of the basement, Edwards observed spoons which were coated with a purple sticky residue, consistent with heroin, as well as other drug paraphernalia; (10) both Gooch and Kappelman had prior arrests for narcotics; and (11) an individual named Charles Gilstrap had advised another officer that he came to the Regal residence about once a week for a "fix" and that the drugs came from an unknown location in the basement.

### III. ANALYSIS

The Fourth Amendment protects the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures. U.S. Const. amend. IV. "It is axiomatic that the physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed." *Welsh v. Wisconsin*, 466 U.S. 740, 748 (1984). A warrantless search of a dwelling or other area where a person has a legitimate expectation of privacy is presumptively unreasonable. *Id.* at 748-49. As the Supreme Court has instructed:

> The point of the Fourth Amendment, which often is not grasped by zealous officers, is not that it denies law enforcement the support of the usual inferences which reasonable men draw from evidence. Its protection consists in requiring that those inferences be drawn by a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime.
>
> . . .
>
> When the right of privacy must reasonably yield to the right of search is, as a rule, to be decided by a judicial officer, not by a policeman or Government enforcement agent.

*Johnson v. United States*, 333 U.S. 10, 13-14 (1948).

Nevertheless, there are exceptions to the search warrant requirement. In its prior order, the Court found that Officer Edwards' initial entry into the Regal residence fell under the "arrest warrant" exception. *See Payton v. New York*, 445 U.S. 573 (1980). This finding was based on the fact that Edwards had reason to believe that Conn lived at the Regal residence and reason to believe he was within. *Payton*, 445 U.S. at 603. The issue now before the Court

ORDER - 4

for its reconsideration is whether Edwards exceeded the permissible scope of the search when he entered the basement living quarters to search for Mr. Conn, knowing that these quarters were the separate residence of Joanne Kappelman and Kenneth Gooch.

The Government relies on *United States v. Underwood*, 717 F.2d 482 (9th Cir. 1983) and *United States v. Gorman*, 314 F.3d 1105 (9th Cir. 2002) for its argument that an officer may enter and execute an arrest warrant in a third-party's home where there is reason to believe that the individual named in the arrest warrant had "crashed" at the third-party residence. This reliance is misplaced.

The decision in *Underwood* was based on the doctrine of standing. 717 F.2d at 484 (*citing Rakas v. Illinois*, 439 U.S. 128 (1978)). In *Underwood*, the police entered the home of an individual named Duckett (the third-party) to search for Mr. Underwood (the Defendant). 717 F.2d at 483. Acting only under the authority of the federal arrest warrant for Underwood, the police entered Duckett's home through a slightly open door. *Id*. The officers found Underwood in the house, armed with a hand gun. *Id*. A partially opened box containing a shotgun and ammunition was also observed in plain view. *Id*. Underwood was subsequently indicted for possession of an unregistered firearm and possession of a firearm by a felon.

The Ninth Circuit held that Underwood could not challenge the search of Mr. Duckett's home because Underwood did not have standing to do so. 717 F.2d at 484. In the case at bar, Mr. Gooch is challenging the search of his own home; therefore, the reasoning of *Underwood* is not dispositvie. Instead, the case of *Steagald v. United States,* 451 U.S. 204 (1981) applies, where the Supreme Court held that a third party not named in the arrest warrant may not have the privacy of his home invaded without a search warrant. *See also United States v. Harper*, 928 F.2d 894, 897 (9th Cir. 1991) (Under the arrest warrant exception, an officer may not search the home of third-party without a search warrant or exigent circumstances.).

ORDER - 5

The case of *United States v. Gorman* also does not assist the Government. In *Gorman*, the Ninth Circuit was concerned with whether the "reason to believe" standard from *Payton* was akin to the standard of reasonableness inherent in probable cause. 314 F.3d at 1111. In the matter *sub judice*, the question presented is not whether Officer Edwards had "reason to believe" that Mr. Conn was in the residence; the issue for reconsideration is once Edwards was inside, did he exceed the permissible scope of the search.

The Court finds persuasive defense counsel's argument that persons of limited means do not have any less of a legitimate expectation of privacy to their "residence." Indeed, the courts have recognized an expectation of privacy to a variety of non-traditional residences. *McDonald v. United States*, 335 U.S. 451 (1948) (room in boarding house); *Johnson v. United States*, 333 U.S. 10 (1948) (hotel room); *United States v. Gooch*, 6 F.3d 673 (9th Cir. 1993) (tent); *Chapman v. United States*, 365 U.S. 610 (1961) (tenant's right to privacy in rental home). Recognizing that *Payton* is a limited exception to the warrant requirement, and that warrantless searches are presumptively unreasonable, Edwards should not have conducted a full search of the basement for Conn, knowing that Conn's "residence" was the room he rented in the upstairs portion of the house and that the basement quarters were not part of the common area.[1] Nevertheless, the Defendant's motion still fails.

As discussed above, there were numerous factors presented in support of the March 22, 2004 search warrant. The only elements which are affected by the Court's analysis regarding the proper scope of the search are the spoons and other drug paraphernalia Edwards observed in the basement living quarters. Even with these elements removed, there was still probable

---

[1] The Court does not express an opinion regarding whether Edwards would have been authorized to conduct a quick protective sweep of the basement or whether Edwards could have just checked in the crawl space under the stairs without conducting a full search of the basement quarters.

ORDER - 6

cause for the search warrant. Probable cause exists when, considering all the circumstances set forth in the affidavit, there is a fair probability that contraband or evidence of a crime will be found in a particular place. *Illinois v. Gates*, 462 U.S. 213, 238 (1983). Here, there are numerous remaining factors which would support the contention that evidence of narcotics possession would be found at the Regal residence. These factors include: (1) the spoons coated with residue and other drug paraphernalia observed in the upstairs bedrooms on March 20, 2004; (2) Edwards' previous contacts at the Regal residence with Conn, Kappelman, and Gooch; (3) information that Conn, Kappelman, and Gooch had prior convictions and/or arrests related to controlled substances; and (4) the statement from Charles Gilstrap that he came to the Regal residence about once a week for a "fix" and that the drugs came from an unknown location in the basement. Accordingly,

**IT IS ORDERED** that:

1. Defendant's Motion for Reconsideration, **Ct. Rec. 52**, is **DENIED**.

2. Defendant's Motion for Discovery, **Ct. Rec. 77**, is **DENIED AS MOOT**.

3. Defendant's Motion in Limine, **Ct. Rec. 78**, is **RESERVED** to the final pretrial conference on **January 30, 2006, at 11:00 a.m., in Spokane**, Washington.

The District Court Executive is directed to file this Order and provide copies to counsel.

**DATED** this 17th day of January, 2006.

01-17

                              s/ Wm. Fremming Nielsen
                              WM. FREMMING NIELSEN
                SENIOR UNITED STATED DISTRICT JUDGE

ORDER - 7